IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

TARA PARKER ex rel. P.H.P., )
 )
      Plaintiff, )
 )
 ) CIV-13-825-C
v. )
 )
CAROLYN W. COLVIN, )
  Acting Commissioner of Social )
   Security Administration, )
 )
      Defendant. )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application on behalf of her minor child for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

In February 2007, Plaintiff filed for SSI benefits for her minor child, P.H.P., alleging

1

P.H.P. was disabled beginning October 1, 2006, due to diabetes, attention deficit hyperactivity disorder ("ADHD"), asthma, allergies, acid reflux, bowel problems, and a learning disability. (TR 82, 127). At that time, P.H.P. was 7 years old. A hearing on the matter was conducted on November 4, 2008. (TR 20-47).

Plaintiff's application was subsequently denied, and Plaintiff appealed the Commissioner's final decision to this Court. In Tara Parker o/b/o P.H.P., a minor child v. Michael J. Astrue, Commissioner, Case No. CIV-10-1315-L, the Commissioner moved to remand the case to the Social Security Administration for further administrative proceedings. The motion was not opposed by the Plaintiff, and the Court entered a Judgment and Order of Remand on August 18, 2011. (TR 675-675).

Following the remand, the Appeals Council vacated the Commissioner's decision and remanded the application for further administrative proceedings on November 15, 2011. The order entered by the Appeals Council instructed that upon remand the ALJ should consider and evaluate the severity of specific additional medically determinable impairments and other diagnosed mental issues during the relevant time period. The ALJ was directed to also provide Plaintiff the opportunity to update the medical evidence in the record and "cite to specific evidence of record in support of the finding of severity of any such medically determinable impairments" and, if warranted by the expanded record "further evaluate whether the claimant's severe impairments, singly or in combination, meet, equal, or functionally equal the criteria of a listed impairment." (TR 671-672).

A supplemental hearing was conducted on June 7, 2012, at which a medical expert

("ME"), Dr. Jaffee, testified. (TR 676-701). Dr. Jaffee subsequently responded to written interrogatories (TR 1336-1342) and testified at a second supplemental hearing conducted on December 3, 2012. (TR 702-727). In a closing statement presented to the ALJ, Plaintiff's attorney argued that P.H.P. had "marked" limitations in the domain of interacting and relating with others as a result of his oppositional defiance disorder, ADHD, and other problems. (TR 723). The attorney cited specific evidence in the record to support this argument. The attorney also argued that P.H.P.'s functional limitation in the domain of health and physical well being was "extreme." (TR 725).

The ALJ issued a decision on April 11, 2013 (TR 652-668), in which the ALJ found that P.H.P. had severe impairments in combination due to "attention deficit hyperactivity disorder; diabetes mellitus, Type 1; a learning disorder; chronic sinusitis; chronic constipation; depression; allergies; asthma; many school absences due to sinus problems and surgeries; a mood disorder; oppositional defiant disorder; bowel problems; gastroesophageal reflux disease; obesity; laryngomalacia; and right sided abdominal abscess." (TR 656).

Following the agency's well-established sequential evaluation procedure, the ALJ found at step three that P.H.P. did not have an impairment or combination of impairments that met or medically equaled the severity of "one of the listed impairments" in 20 C.F.R. pt. 404, subpt. P, app. 1 (TR 658). The ALJ further found that P.H.P. did not have an impairment or combination of impairments that functionally equaled the severity of the listings. (TR 658). In discussing the medical and nonmedical evidence relevant to this finding, the ALJ found that P.H.P. had "less than marked" limitation in acquiring and using

3

information and "less than marked" limitation in attending and completing tasks, (TR 662-663). P.H.P. had "less than marked" limitation in the domain of interacting and relating with others, "less than marked" limitation in moving about and manipulating objects, and "less than marked" limitation in the domain of caring for himself. (TR 665-666). Finally, the ALJ found that P.H.P. had "marked" limitation in the domain of health and physical well being. (TR 667). Based on these findings, the ALJ concluded that P.H.P. was not disabled within the meaning of the Social Security Act. (TR 667).

Plaintiff now seeks judicial review of the final decision of the Commissioner. The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not

4

substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The review of this case involves children's benefits. A child is considered disabled if he or she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. See 42 U.S.C. § 1392c(a).

In determining whether a minor child is disabled, the ALJ follows a three-step evaluation process. 20 C.F.R. § 416.924(a). See Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001(describing evaluation process). The ALJ first determines whether the child is engaged in substantial gainful activity. If not, the ALJ determines whether the child has an impairment or combination of impairments that are severe. If so, the ALJ determines whether the child's impairment or impairments meet, medically equal, or functionally equal the listings in 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. § 416.924(a).

In determining whether an impairment functionally equals the listings, a determination that occurs only when the ALJ finds that the impairment does not meet or medically equal a listing, the ALJ must evaluate the child's functioning in each of six domains. Id. at §416.926a(b)(1)(I)-(vi). If the ALJ finds that the minor child has marked limitations in at least two of the six domains, or extreme limitations in one of the domains, then the child's impairment(s) functionally equal the listings. Id. at. § 416.926a(d). A "marked" limitation occurs when an impairment "interferes seriously with [the minor child's] ability to

5

independently initiate, sustain, or complete activities." Id. at § 416.926a(e)(2)(I). An "extreme limitation" is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. at § 416.926a(e)(3)(I).

III. Step Three Determination

Plaintiff contends that the ALJ erred by failing to discuss the evidence and explain why he found P.H.P.'s impairments did not meet or medically equal the requirements of the listed impairment for ADHD at step three. Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1995).

Citing Clifton, Plaintiff contends that the ALJ erred by failing to discuss the evidence and explain why he found P.H.P.'s impairments did not meet or medically equal the requirements of a listed impairment. Plaintiff further contends that P.H.P.'s ADHD impairment satisfied the requirements of Listing 112.11.

In response, the Commissioner contends that (1) Plaintiff did not claim at the administrative level that P.H.P. was disabled under Listing 112.11, (2) the ALJ provided a sufficient evidentiary basis for his step three finding that P.H.P.'s impairments did not meet or medically equal the requirements of a listed impairment and did not err in relying on the opinion of Dr. Jaffee to support the step three determination, and (3) even if the ALJ's

discussion should have been more explicit the ALJ discussed the evidence relevant to Listing 112.11 in finding that P.H.P.'s functional limitations were not severe enough to be disabling under the regulations.

In the ALJ's decision, the ALJ found at step two that P.H.P. had a combination of severe impairments due to sixteen different conditions, including ADHD, diabetes, oppositional defiant disorder, a mood disorder, and a learning disability. In finding at step three that P.H.P. did not have an impairment or impairments that met or medically equaled the requirements of a listed impairment, the ALJ stated:

> Dr. Alvin Jaffee, M.D., the impartial medical expert, opined that the claimant does not have an impairment or combination of impairments that medically meets or medically equals the severity of one of the listed impairments. Based upon Dr. Jaffee's medical opinion, the [ALJ] finds that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

(TR 658).

The ALJ's reliance upon Dr. Jaffee's medical opinion is not an adequate substitute for the ALJ's required step three analysis. In <u>Clifton</u>, the Tenth Circuit Court of Appeals found that the ALJ "did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment. . . . Such a bare conclusion is beyond meaningful judicial review." <u>Clifton</u>, 79 F.3d at 1009. Finding that the case must be reversed and remanded for further administrative proceedings to correct the error, the court explained that "the ALJ was required to discuss

7

the evidence and explain why he found that appellant was not disabled at step three." Id.

The ALJ in this case did little more than refer to Dr. Jaffee's medical opinion. The decision contains no reference to the listing or listings that were considered or indicate what evidence was considered or how that evidence was evaluated in reaching the step three finding. The ALJ erred in rendering a conclusory step three decision.[1] Whether this error warrants reversal or not requires more analysis, however.

In clarifying the decision in Clifton, the Tenth Circuit Court of Appeals has recognized that "an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). Such a harmless error analysis focuses on whether "based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Id. at 733-734.

The ALJ's decision contains findings and a lengthy discussion concerning the issue of whether P.H.P.'s impairments functionally equaled the requirements of a listed impairment. This extensive and detailed discussion of the medical and nonmedical evidence in the record easily confirms the ALJ's implicit finding of nondisability under Listing 112.11.

---

[1]In this regard, and contrary to Defendant Commissioner's suggestion, Plaintiff was not required to identify a relevant listing in the administrative proceedings. See Clifton, 79 F.3d at 1009 (noting ALJ did not "even identify" the relevant listing(s)).

Listing 112.11 for ADHD requires medical evidence of marked inattention, marked impulsiveness, and marked hyperactivity, as well as "at least two of the appropriate age-group criteria in paragraph B2 of 112.02." 20 C.F.R. pt. 404, subpt. P, app. 1, §112.11. Paragraph (B)(2) of Listing 112.02 requires "[m]arked impairment in age-appropriate cognitive/communicative function, documented by medical findings. . . and including, if necessary, the results of appropriate standardized psychological tests," "[m]arked impairment in age-appropriate social functioning, documented by history and medical findings," "[m]arked impairment in age-appropriate personal functioning, documented by history and medical findings," or "[m]arked difficulties in maintaining concentration, persistence, or pace." 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.02(B)(2).

The ALJ discussed the medical evidence with respect to each of the six functional domains and found that P.H.P.'s impairments were not functionally equal to a listed impairment because P.H.P.'s functional limitations were "marked" in only one category, that of health and physical well being, and were "less than marked" in the other five categories.

Even assuming that P.H.P.'s ADHD impairment satisfied the criteria of Part A of the relevant Listing, Plaintiff has not shown that P.H.P.'s impairments satisfy the required criteria of Part B of Listing 112.11. In support of her argument, Plaintiff merely cites to pages in the record and states a conclusion mirroring the listing's requirements. The relevance of these page references in not apparent, and the argument lacks the specificity required to evaluate the merits of the contention. See Effinger v. Callahan, 125 F.3d 861

9

(Table), 1997 WL 446724, *2 (10th Cir. 1997)(unpublished op.)(stating court "has previously held that it will not comb through the record where counsel has not provided specific references tied to an argument")(citing SEC v. Thomas, 965 F.2d 825, 827 (10th Cir. 1992)).

As the ALJ pointed out in the decision with respect to the domain of attending and completing tasks, a domain that is comparable to Listing 112.11's criteria for "marked" difficulties in maintaining concentration, persistence, or pace, "[t]here are no recent school notes" in the record or "indication of problems attending and completing tasks at school." (TR 663).

Additionally, with regard to the domain of interacting and relating with others, a domain that is comparable to the listing's criteria for age-appropriate social functioning, the ALJ pointed out that "[t]here is no indication of suspensions or expulsions or disruptive behavior or disrespect shown towards teachers at school" and a therapist noted in December 2011 that P.H.P. had made progress in expressing his emotions in an appropriate manner. (TR 664, 1178).

With regard to the domain of acquiring and using information, which is comparable to the criteria in the listing for age-appropriate cognitive/communicative function, the ALJ found that P.H.P. had been diagnosed with ADHD and placed on medication that his mother reported was effective. (TR 662). Although the ALJ noted that P.H.P. had repeated the first grade, the ALJ reasoned that in December 2011, his therapist's notes indicated his grades were improving and he was getting along with his teachers. (TR 662, 1186).

No treating or examining physician has found that P.H.P.'s impairments met or equaled the requirements of a listed impairment. Dr. Jaffee testified in June 2012 that P.H.P.'s medical records evidenced a history to type I diabetes, sinusitis, ADHD, and constipation and intestinal impairments, that these impairments were severe, but that they did not meet, medically equal, or functionally equal the requirements of a listing. (TR 681).

It was Plaintiff's "step three burden to present evidence establishing her [child's] impairments meet or equal listed impairments." Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). To satisfy this burden, Plaintiff must establish that her child's impairments "meet all of the specified medical criteria. An impairment that manifests only some . . . criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Plaintiff did not satisfy this burden, and the ALJ's error in analyzing the evidence with respect to the criteria of the listing for ADHD was harmless.

Plaintiff next contends that there is not substantial evidence to support the ALJ's determination that P.H.P. had less than marked functional limitations in attending and completing tasks and in interacting and relating with others. The ALJ's decision, however, includes numerous reasons for the finding that P.H.P.'s impairments were not of the severity required to establish disability under the regulations.

In support of her argument, Plaintiff again lists pages in the record that she believes should have been considered by the ALJ. However, many of these references describe the notes of P.H.P.'s therapist. These notes summarize P.H.P.'s mother's subjective statements

of various complaints at various times, i.e., that she overheard P.H.P. describing auditory and visual hallucinations, that he was not paying attention or that he disliked football and basketball. The ALJ did not err by failing to expressly consider these notes from nonacceptable medical sources setting forth various subjective complaints from P.H.P.'s mother. Nothing in these notes or in the remainder of the medical evidence in the record reflects a therapist's or treating medical professional's persistent observations that P.H.P. exhibited severe functional limitations related to the domains of attending and completing tasks and interacting or relating with others. Because there is substantial evidence in the record to support the ALJ's decision, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before      September 24th, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned

Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ____4th____ day of ____September____, 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE